MORGAN, LEWIS & BOCKIUS LLP
Andrew P. Frederick, Bar No. 284832
1400 Page Mill Road
Palo Alto, CA 94304
Tel:   +1.650.843.4000
Fax:   +1.650.843.4001
andrew.frederick@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
Joseph R. Lewis, Bar No. 316770
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel:   +1.415.442.1000
Fax:   +1.415.442.1001
joseph.lewis@morganlewis.com

Attorneys for Defendant
UNIFI AVIATION, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNIE BIDDLE III, an individual, on behalf of himself and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>UNIFI AVIATION, LLC, a Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. _____<br><br>[San Francisco Sup. Court Case No. CGC-25-621380]<br><br>**DEFENDANT UNIFI AVIATION, LLC'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**<br><br>**[28 U.S.C. §§ 1332(d), 1441, 1446, 1453]** |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendant Unifi Aviation, LLC ("Defendant" or "Unifi") hereby removes the above-entitled action from the Superior Court of the State of California, County of San Francisco, to the United States District Court for the Northern District of California. This Court has original subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453, because minimum diversity exists and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

In support of this removal, Defendant states the following:

## I.     SUMMARY OF COMPLAINT

1. On January 13, 2025, Plaintiff Ronnie Biddle III ("Plaintiff") filed an unverified class action complaint ("Complaint") in the Superior Court of the State of California, County of San Francisco, entitled *Ronnie Biddle III v. Unifi Aviation, LLC*, Case No. CGC-25-621380 (the "Superior Court action"). The Complaint alleges ten causes of action: (1) failure to pay minimum wages for all hours worked in violation of Labor Code §§ 204, 1194, 1194.2, and 1197; (2) failure to pay overtime wages in violation of Labor Code §§ 510, 1194, and 1198; (3) failure to provide meal periods in violation of Labor Code §§ 226.7 and 512; (4) failure to provide rest periods in violation of Labor Code § 226.7; (5) failure to reimburse employees for required expenses in violation of Labor Code § 2802; (6) failure to provide complete and accurate wage statements in violation of Labor Code § 226; (7) failure to provide paid sick leave in violation of Labor Code §§ 246-248.5); (8) failure to timely pay wages upon separation of employment in violation of Labor Code § 201-203; (9) failure to timely pay wages during employment in violation of Labor Code § 204; and (10) unfair and unlawful business practices in violation of Business & Professions Code § 17200, *et seq.*;

2. Plaintiff filed his Complaint after the effective date of the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2 (enacted Feb. 18, 2005), codified at 28 U.S.C.

§§ 1332(d), 1453 and 1711-1715.

3. On January 16, 2025, Plaintiff caused the Complaint, Summons, Civil Case Cover Sheet, Notice to Plaintiff re Case Management Conference, and Information Sheet – Voluntary Expedited Jury Trial Summary to be served on Defendant's process server by personal service. Attached as **Exhibit 1** and incorporated by reference is a copy of the Complaint that was served on Defendant. Attached as **Exhibit 2** and incorporated by reference are copies of the other case-initiating documents Plaintiff served on Defendant.

4. On February 14, 2025, Defendant caused its Answer to the Complaint to be filed and served. A true and correct copy of Defendant's Answer is attached hereto as **Exhibit 3** and is incorporated by reference.

5. Exhibits 1 – 3 constitute all the pleadings, process and orders served upon or by Defendant, or filed, in the Superior Court action.

## II. THE REMOVAL IS TIMELY

6. This Notice of Removal is timely in that 28 U.S.C. § 1446(b) requires that a notice of removal in a civil action must be filed within thirty (30) days after service of the summons and complaint. 28 U.S.C. § 1446(b). Plaintiff filed his Complaint in the San Francisco County Superior Court on January 13, 2025, and served Defendant with the Summons and Complaint on January 16, 2025. Thirty (30) days from January 16, 2025, is Saturday, February 15, 2025. Monday February 17 is a federal court holiday, Presidents Day. Because this Removal is filed on or before the next court day, Tuesday, February 18, 2025, it is timely.

7. No previous Notice of Removal has been filed or made with this Court for the relief sought.

## III. DIVERSITY JURISDICTION EXISTS

### A. The Court Has Original Subject Matter Jurisdiction Under CAFA.

8. This lawsuit is a civil action within the meaning of the Acts of Congress relating to removal of class actions. *See* 28 U.S.C. § 1453.

9. This action is brought by a putative representative person on behalf of a proposed

class of individuals identified as follows: "All persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending on the first day of trial in this matter." Compl., ¶ 21. As such, this matter is a purported class action as that term is defined in the CAFA, 28 U.S.C. § 1332(d)(1)(B), and 28 U.S.C. § 1453.

10. This Court has original subject matter jurisdiction based on diversity of citizenship under CAFA because this matter was brought as a class action, diversity of citizenship exists between one or more members of the purported class and Defendant, the number of proposed class members is 100 or greater, and the amount placed in controversy by Plaintiff's Complaint exceeds, in the aggregate, $5,000,000, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), 1453.[1] Removal is therefore proper pursuant to 28 U.S.C. §§ 1441, 1446 and 1453.

### B. Diversity of Citizenship Exists.

11. In order to satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists, such that one putative class member is a citizen of a state different from that of one defendant. 28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

#### 1. Plaintiff Is a Citizen of California.

12. "An individual is a citizen of the state in which he is domiciled . . ." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed.

---

[1] Defendant does not concede and reserves the right to contest at the appropriate time Plaintiff's allegations that this action can properly proceed as a class action. Defendant further does not concede that any of Plaintiff's allegations constitute a cause of action under applicable California law.

*Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

13. Continuing residence creates a presumption of domicile. *Washington v. Hovensa LLC*, 652 F.3d 340, 345 (3rd Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994).

14. Plaintiff alleges that he is a resident of California and that he worked for Defendant in California. Compl., ¶ 1. Thus, Plaintiff is domiciled in the State of California, and is therefore a citizen of California for purposes of diversity jurisdiction in this matter.

### 2. Defendant Is a Citizen of Delaware, Florida, Georgia, Nevada, and New York.

15. Defendant Unifi Aviation, LLC is a limited liability company, which is treated the same as unincorporated associations for purposes of citizenship. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). "Notwithstanding LLCs' corporate traits, however, every circuit that has addressed the question treats them like partnerships for purposes of diversity jurisdiction." *See id.* (citing *Gen. Tech. Applications, Inc. v. Exro Ltda.*, 388 F.3d 114, 120 (4th Cir. 2004); *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 828-29 (8th Cir. 2004); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004); *Handelsman v. Bedford Village Assocs. Ltd P'ship*, 213 F.3d 48, 51 (2d Cir. 2000); *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998)).

16. Therefore, for purposes of diversity jurisdiction, the corporate citizenship rule does not apply to LLCs. *See* 28 U.S.C. § 1332(c). Instead, the Ninth Circuit looks to the citizenship of each of the LLC's members. *See Johnson*, 437 F.3d at 899; *see also Carden v. Arkoma Assocs.*, 494 U.S. 185, 189 (1990). Consistent with its sister circuits, the Ninth Circuit has held that, like a partnership, an LLC is a citizen of every state of which its owners/members are citizens. *Johnson*, 437 F.3d at 899; *Lindley Contours, LLC v. AABB Fitness Holdings, Inc.*, 414 Fed. App'x 62 (9th Cir. 2011). "If a member of an LLC is a corporation, then the state of incorporation and its principal place of business must be shown." *Carleu v. FCA US LLC*, 2016

WL 304295, at *1 (C.D. Cal. Jan. 25, 2016).

17.    Since January 13, 2025, when Plaintiff commenced this action, Unifi has been a Delaware limited liability company, with its principal place of business in Atlanta, Georgia. The sole member of Unifi Aviation since January 13, 2025, has been Unifi Aviation North America, LLC ("Unifi North America").

18.    Since January 13, 2025, Unifi North America has been a Delaware limited liability company, with its principal place of business in Atlanta, Georgia and therefore a citizen of Delaware and Georgia. The sole member of Unifi North America is AirCo Aviation Services, LLC ("AirCo Aviation Services").

19.    Since January 13, 2025, AirCo Aviation Services, LLC has been a Delaware limited liability company, with its principal place of business in Atlanta, Georgia and therefore a citizen of Delaware and Georgia. AirCo Aviation Services, LLC has consisted of three members: Delta Air Lines, Inc. ("Delta"), Scrub Holdings, Inc. ("Scrub"), and Argenbright Holdings IV, LLC.

20.    For diversity purposes, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Since January 13, 2025, Delta has been a corporation organized and existing under and by virtue of the laws of the State of Delaware. During this time, Delta has had its corporate headquarters and principal place of business in Atlanta, Georgia. Accordingly, Delta is a citizen of Delaware and Georgia for the purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

21.    Since January 13, 2025, Scrub has been a corporation organized and existing under and by virtue of the laws of the State of Delaware. During this time, Scrub has had its corporate headquarters and principal place of business in Atlanta, Georgia. Accordingly, Scrub is a citizen of Delaware and Georgia for the purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

22.    Since January 13, 2025, Argenbright Holdings IV, LLC has been a Delaware

Morgan, Lewis & Bockius LLP
Attorneys At Law
Silicon Valley

6

CASE NO. _____
UNIFI'S NOTICE OF REMOVAL OF
ACTION TO FEDERAL COURT

limited liability company, with its principal place of business in Atlanta, Georgia and therefore a citizen of Delaware and Georgia. During this time, Argenbright Holdings IV, LLC has consisted of a sole member, Argenbright Holdings V, LLC.

23.  Since January 13, 2025, Argenbright Holdings V, LLC has been a Delaware limited liability company, with its principal place of business in Atlanta, Georgia and therefore a citizen of Delaware and Georgia. During this time, Argenbright Holdings V, LLC has consisted of a sole member, Argenbright Master Holding, LLC.

24.  Since January 13, 2025, Argenbright Master Holding, LLC has been a Delaware limited liability company, with its principal place of business in Atlanta, Georgia and therefore a citizen of Delaware and Georgia. During this time, Argenbright Master Holding, LLC has consisted of three members: Frank A. Argenbright, Jr., The Sarah Blythe Argenbright and Descendants Nevada Trust, and The Hunter B. Argenbright and Descendants Nevada Trust.

25.  Since January 13, 2025, Frank A. Argenbright, Jr. has resided and been domiciled in Florida and therefore has been a citizen of Florida during this time.

26.  Since January 13, 2025, the co-trustees of The Sarah Blythe Argenbright and Descendants Nevada Trust, which was formed in Nevada, have been the Alliance Trust Company of Nevada, Karan Ishwar, and Sarah B. Argenbright. *See Johnson*, 437 F.3d at 899 ("A trust has the citizenship of its trustee or trustees."). The Alliance Trust Company of Nevada was formed in Nevada and has Reno, Nevada, as its principal place of business. Thus, for diversity purposes, the Alliance Trust Company of Nevada is a citizen of Nevada. Karan Ishwar and Sarah B. Argenbright are individuals who have resided and have been domiciled in Georgia since January 13, 2025, thereby making them citizens of Georgia for diversity purposes.

27.  Since January 13, 2025, the co-trustees of The Hunter B. Argenbright and Descendants Nevada Trust, which was formed in Nevada, have been the Alliance Trust Company of Nevada, Karan Ishwar, and Hunter B. Argenbright. The Alliance Trust Company of Nevada was formed in Nevada and has Reno, Nevada, as its principal place of business. Thus, for diversity purposes, the Alliance Trust Company of Nevada is a citizen of Nevada.

Karan Ishwar is an individual who has resided and has been domiciled in Georgia since January 13, 2025, thereby making her a citizen of Georgia for diversity purposes. Hunter B. Argenbright is an individual who has resided and has been domiciled in New York since January 13, 2025, thereby making him a citizen of New York for diversity purposes.

28. Based on the Complaint, therefore, at least one member of the putative class is a citizen of a state different from that of one defendant, as the named Plaintiff is a citizen of California, while Unifi is a citizen of Delaware, Florida, Georgia, Nevada, and New York. *See* 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any defendant"). Thus, minimal diversity exists.

29. Although Plaintiff has listed 10 fictitiously-named "Doe" defendants, the citizenship of these "Doe" defendants is disregarded for purposes of removal. 28 U.S.C. § 1441(b)(1) (for purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded"); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998) (same).

**C.     There Are More Than 100 Putative Class Members.**

30. CAFA's requirement that proposed class membership be no less than 100 (28 U.S.C. § 1332(d)(5)) is satisfied here because the putative class has more than 100 members.

**D.     The Amount-in-Controversy Requirement Is Satisfied.**

31. Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(6). A removing defendant "must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 551 (2014).

32. The "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S.Ct. at 554. "[D]efendants do not need to prove to a legal certainty that the amount in controversy

1  requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional

2  threshold has been met." *Id.,* quoting H.R.Rep. No. 112–10, p. 16 (2011).

33. Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the applicability of CAFA should be resolved in favor of federal jurisdiction. Sen. Rep. No. 109-14, p. 42 (2005) ("If a federal court is uncertain about whether 'all matters in controversy' in a purported class action do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case.").

34. In assessing the amount in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (citing *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). In *Vitran,* the court held that it was proper for a defendant in a putative wage and hour class action to establish the amount in controversy requirement for purposes of CAFA by assuming a minimum number of meal and rest period violations per class member. 471 Fed. App'x at 648. Noting that the plaintiffs alleged that their claims were "typical" of the other putative class members, the Court also found it proper to multiply the plaintiffs' claimed damages by the number of putative class members in order to meet the amount in controversy requirement. *Id.* at 649.

35. While Defendant denies Plaintiff's factual allegations and denies that he or the putative class he purports to represent are entitled to any of the relief Plaintiff has requested in the Complaint, it is clear that, when the maximum potential value of the claims of Plaintiff and the putative class members are aggregated, the allegations within Plaintiff's Complaint put into controversy an amount in excess of $5,000,000.[2] *Rhoades v. Progressive Casualty Ins., Co.*, 410

---

[2] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiff's Complaint. Defendant's references to specific damage amounts and its citation to comparable cases are provided solely for the purpose of establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Defendant maintains that each of Plaintiff's claims is without merit and that Defendant is not liable to Plaintiff or any putative class member. In addition, Defendant denies that liability or damages can be established

F. App'x 10, 11 (9th Cir. 2010) ("'Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million, . . . then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much.'") (quoting *Lewis v. Verizon Communications Inc.*, 2010 WL 4645465, 4 (9th Cir. 2010)).

36. Plaintiff alleges, in pertinent part, that Defendant "Defendants required Plaintiff to perform work during uncompensated meal periods and rest periods. By their failure to pay compensation for each hour worked as alleged above, Defendants willfully violated the provisions of Labor Code § 1194, and any additional applicable Wage Orders that require such compensation to non-exempt employees." Compl., ¶ 30.

### 1. **Plaintiff's Meal Break Claim Places at Least $6,222,437.80 in Controversy.**

37. In the Third Cause of Action, Plaintiff alleges that "Defendants regularly failed to provide Plaintiff and the Class timely full thirty-minute meal period for each five-hour period of work as required under the foregoing provisions of the California Labor Code and IWC Wage Order. Due to heavy workloads and understaffing, Plaintiff's meal breaks were often delayed, interrupted, and shortened. Plaintiff was required to carry his work phone during meal breaks and respond to work-related calls. As a result, he was forced to cut his breaks short and remain clocked out until the end of the mandatory meal break period." Compl., ¶ 48.

38. Plaintiff defines the "Class" as "All persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending on the first day of trial in this matter." *Id.* at ¶ 21.

39. California Industrial Welfare Commission Wage Order 9 provides in relevant part that "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes." IWC Wage Order 9, § 11(A). Labor Code

---

on a class wide basis. Defendant specifically denies that Plaintiff or the putative class have suffered any damages as a result of any act or omission by Defendant. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise.

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Silicon Valley

10

CASE NO. _____
UNIFI'S NOTICE OF REMOVAL OF
ACTION TO FEDERAL COURT

Section 226.7 provides that if an employer fails to provide a meal period as required by law, the employer shall pay "one additional hour of pay at the employee's regular rate of compensation for each work day that the meal . . . period was not provided." *See also Brinker v. Superior Court*, 53 Cal. 4th 1004, 1039 (2012).

40. According to Defendant's records, since January 13, 2021, Defendant's hourly, non-exempt employees in California have worked approximately 1,003,619 shifts that lasted longer than five hours.

41. Based on the Complaint's allegations, Defendant could reasonably assume that Plaintiff seeks meal period premiums for every shift over five hours in length that a putative class member has worked. *See, e.g.*, *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal May 21, 2015) ("It is not unreasonable to assume that when a company has unlawful policies and they are uniformly 'adopted and maintained,' then the company may potentially violate the law in each and every situation where those policies are applied."); *Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, at *6 (C.D. Cal. Apr. 28, 2015) (approving a 100% violation rate because the complaint alleged "universal deprivation of meal and rest periods" because the defendant allegedly had "at all material times" failed to provide uninterrupted meal and rest periods).

42. Even though Defendant reasonably could assume a 100% violation rate for purposes of removal, here Defendant conservatively estimates that Plaintiff has put into controversy two alleged meal period violations for every five shifts over five hours (*i.e.*, an assumed 40% violation rate). Assuming that Defendant failed to provide two meal periods every five shifts over five hours, the potential amount in controversy under Section 226.7 for failing to provide meal breaks to Unifi's hourly, non-exempt employees in California since January 13, 2021 would be at least: (1,003,619 x 0.4) shifts x 1 meal period premium x $15.50 (lowest hourly minimum wage during the relevant period) = **$6,222,437.80**.

   2. **Plaintiff's Rest Break Claim Places At Least $6,564,901.00 in Controversy.**

43. In the Fourth Cause of Action, Plaintiff alleges that, "Despite these legal

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

11

CASE NO. _____
UNIFI'S NOTICE OF REMOVAL OF
ACTION TO FEDERAL COURT

requirements, Defendants failed to authorize Plaintiff and the Class to take uninterrupted rest breaks, regardless of whether employees worked more than four hours in a workday. For example, Plaintiff's rest breaks were often interrupted, and shortened due to understaffing. Additionally, Plaintiff was required to carry his work phone during rest breaks and answer work-related calls." Compl., ¶ 53.

44. Wage Order 9 provides in relevant part that "[e]very employer shall authorize and permit all employees to take rest periods . . . . The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours." IWC Wage Order 9, § 12(A). Labor Code Section 226.7 provides that if an employer fails to provide rest periods as required by law, the employer shall pay "one additional hour of pay at the employee's regular rate of compensation for each work day that the . . . rest period was not provided." *See also Brinker*, 53 Cal. 4th at 1039.

45. According to Defendant's records, since January 13, 2021, Defendant's hourly, non-exempt employees in California have worked approximately 1,058,855 shifts that lasted 3.5 hours or longer.

46. Based on the Complaint's allegations that "Plaintiff's rest breaks were often interrupted, and shortened due to understaffing. Additionally, Plaintiff was required to carry his work phone during rest breaks and answer work-related calls" *Id.*, ¶ 53, Defendant conservatively estimates that Plaintiff has put into controversy two alleged rest period violations for every five shifts of 3.5 hours or longer (*i.e.*, an assumed 40% violation rate). Assuming that Defendant failed to provide two rest periods every five shifts of 3.5 hours or longer, the potential amount in controversy under Section 226.7 for failing to provide rest breaks to Unifi's hourly, non-exempt employees in California since January 13, 2021 would be at least: (1,058,855 x 0.4) shifts x 1 rest period premium x $15.50 (lowest hourly minimum wage during the relevant period) = **$6,564,901.00**.

### 3. Plaintiff's Alleged Attorneys' Fees Place at Least $3,196,834.70 in Controversy.

47. Plaintiff seeks to recover attorneys' fees. Compl., p. 29, ¶ 2. Attorneys' fees are properly included in determining the amount in controversy if the law under which the plaintiff has brought suit allows for their recovery. *See Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("Because the law entitles [the plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."); *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018) (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648-49 (9th Cir. 2016)) ("The amount in controversy may include 'damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes.'").

48. For purposes of class actions, attorneys' fees may be calculated by assuming 25 percent of the potential damages on claims for which attorneys' fees are available. *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (benchmark for attorneys' fees is 25% of the common fund). Here, attorneys' fees are available on Plaintiff's claims for meal and rest breaks. *See Betancourt v. OS Rest. Servs., LLC*, 83 Cal. App. 5th 132, 140 (2022) (holding that employees bringing successful meal and rest break claims are entitled to recover attorneys' fees under California Labor Code section 218.5). The amount in controversy for Plaintiff's meal and rest period claims is $12,787,338.80. Therefore, the amount in controversy for attorneys' fees is **$3,196,834.70** ($12,787,338.80 x 0.25).

### 4. For CAFA Purposes, the Amount in Controversy Exceeds $5,000,000.

49. As demonstrated above, the alleged damages on Plaintiff's Fourth and Fifth Causes of Action total at least $12,787,338.80. In addition, Plaintiff seeks recovery for himself and all putative class members for further causes of action, including alleged failure to pay minimum wages, unpaid overtime, wage statement penalties, and waiting time penalties. Each of these claims, if added to the aggregate potential damages, further increases the amount in

controversy.

50. Based on the calculations outlined above, the total amount in controversy exceeds $5,000,000.00 as follows:

|  |  |  |  |
|---|---|---|---|
| A. | Meal period premiums: | | $6,222,437.80 |
| B. | Rest period premiums: | | $6,564,901.00 |
| C. | Attorneys' fees: | | $3,196,834.70 |

**TOTAL AMOUNT IN CONTROVERSY: $15,984,173.50**

51. Thus, although Defendant denies Plaintiff's allegations and theories of maximum recovery, denies that Plaintiff or the putative class he purports to represent are entitled to any of the relief for which they have prayed, and expressly reserves all of its defenses, based on Plaintiff's allegations, the amount in controversy on *only two* of Plaintiff's *ten* **claims** for damages is at least **$15,984,173.50** and thus exceeds the $5,000,000 threshold set forth under 28 U.SC. §1332(d)(2).

52. Therefore, Plaintiff's Complaint satisfies the amount in controversy requirement of CAFA.

IV. **THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED.**

53. As set forth above, this Notice of Removal is filed within thirty days of service of process on Defendant and all process, pleadings, and orders that have been served (or purportedly served) on Defendant in this action are attached hereto in **Exhibits 1 - 3**.

54. Venue lies in the Northern District of California pursuant to 28 U.S.C. § 1441(a), 1446(a) and 84(c). This action was originally brought in the Superior Court of the State of California, County of San Francisco, even though Plaintiff's employment is in San Mateo County (which is also in the jurisdiction of this Court). Compl., ¶ 1. Therefore, this is the appropriate Court for removal.

55. As required by 28 U.S.C. § 1446(d), Defendant will promptly serve Plaintiff with this Notice of Removal and will promptly file a copy of this Notice of Removal with the Superior Court of the State of California, County of San Francisco.

56. Defendant is informed and believes and, on that basis, alleges that none of the fictitiously-named defendants have been identified by Plaintiff or served with the Summons and Complaint.

57. Defendant has sought no similar relief.

58. If any question arises as to the propriety of the removal of this action, Defendant requests the opportunity to present a brief and oral argument in support of its position that this case is removable.

59. By this Notice of Removal and the exhibits attached hereto and the documents filed concurrently herewith, Defendant does not intend to make any admissions of fact, law or liability relating to the claims in the Complaint, and it expressly reserves the right to make any and all defenses and motions necessary in its defense against Plaintiff's allegations.

## V.  **CONCLUSION**

Pursuant to these statutes and in accordance with the procedures set forth in 28 U.S.C. § 1446, Defendant prays that the above-captioned action pending in the Superior Court of the State of California, County of San Francisco, be removed therefrom to the United States District Court for the Northern District of California.

Dated: February 14, 2025                    MORGAN, LEWIS & BOCKIUS LLP

By   */s/ Andrew P. Frederick*
　　　Andrew P. Frederick
　　　Joseph R. Lewis

Attorneys for Defendant
UNIFI AVIATION, LLC

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

15

CASE NO. _____
UNIFI'S NOTICE OF REMOVAL OF
ACTION TO FEDERAL COURT